UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BASSO BUILDERS INC. and JOSH BASSO,

      Plaintiffs,

v.

TOWN OF GENEVA,

      Defendant.

Case No. 21-CV-697-JPS

**ORDER**

---

**1. INTRODUCTION**

In September 2024, the Court granted in part and denied in part Defendant Town of Geneva's ("Defendant") motion for summary judgment. ECF No. 53. The Court dismissed Plaintiffs Basso Builders Inc. and Josh Basso's ("Plaintiffs") equal protection claim but denied Defendant's motion for summary judgment as to Plaintiffs' takings claim. *Id.* at 2, 38–39.

Defendant now moves for reconsideration of the Court's order to the extent that it denied summary judgment in part. ECF No. 55. Plaintiffs opposed the motion, ECF No 56, and Defendant replied, ECF No. 57. For the reasons discussed herein, the motion for reconsideration must be denied.

**2. STANDARD OF REVIEW**

The instant motion for reconsideration is governed by Rule 54(b). Rule 54(b) provides that a nonfinal order "may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). A court's discretion to

reconsider an order under Rule 54(b) is "sweeping." *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012).

Motions for reconsideration are, as a general matter, granted only in rare circumstances. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). They are appropriate in very few contexts, such as where the Court has "patently misunderstood a party," "has made a decision outside the adversarial issues presented to the Court," "has made an error not of reasoning but of apprehension," or where there has been a "controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (quoting *Above the Belt*, 99 F.R.D. at 101). Such motions may also serve to correct "manifest errors of law or fact." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *opinion amended on denial of reh'g sub nom. Rosenthal & Co. v. Rothwell Cotton Co.*, 835 F.2d 710 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citing *In Re Oil Spill*, 794 F. Supp. 261, 267 (N.D. Ill. 1992), *aff'd*, 4 F.3d 997 (7th Cir. 1993), and *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986)).

3. **ANALYSIS**

Defendant alleges that the Court erred in two respects in its order granting in part and denying in part Defendant's motion for summary judgment: first, that the Court "conflat[ed] . . . stormwater *velocity* and stormwater *volume*" in applying the test set forth by *Nollan v. California*

*Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), "result[ing] in the improper denial of summary judgment" on Plaintiffs' takings claim, ECF No. 55 at 2; and second, that the Court erroneously concluded that the issue of "rough proportionality" could be put before a jury. *Id.* The Court discusses each contention in turn.

### 3.1 Alleged Reliance on Irrelevant Evidence

Defendant first contends that the Court improperly considered "irrelevant expert opinions from Plaintiffs' expert on the subject of stormwater *volume*," "conflat[ing] . . . stormwater *velocity* and stormwater *volume*," when it applied the *Nollan/Dolan* test. ECF No. 55 at 2.

The Court disagrees. Defendant has not demonstrated that the Court conflated the concept of stormwater volume with that of stormwater velocity and erroneously denied summary judgment for Defendant on Plaintiffs' takings claim.[1] Rather, the Court appropriately concluded that there was conflicting evidence in the record as to whether the condition imposed—for Plaintiffs to alleviate stormwater drainage concerns on the Violet Road Sites as a general matter and, specifically, to reduce the drainage velocity to pre-2006 pipe-installation levels to alleviate downstream flooding and erosion—was roughly proportional[2] to the

---

[1] The word "volume" never even appears in the Court's analysis, nor in any portion of the experts' testimony on which the Court relied.

[2] For what it's worth, while the Supreme Court in *Dolan* attempted to clarify the unconstitutional conditions analysis by introducing the "rough proportionality" standard, it did very little to elaborate on what that standard looks like. *E.g.*, 512 U.S. at 392; Christopher J. St. Jeanos, Note, Dolan v. Tigard *and the Rough Proportionality Test: Roughly Speaking, Why Isn't a Nexus Enough?*, 63 Fordham L. Rev. 1883, 1887 (1995) (noting that the *Dolan* Court "failed to clarify the specific requirements of the 'rough proportionality' test"); *id.* at 1888 ("While *Dolan* offers some guidance in addressing these issues, it does not articulate precisely what level of scrutiny is required by 'rough proportionality.'"). "*Dolan*'s

stormwater drainage-related issues that Plaintiffs' development of the Violet Road Sites actually caused and was anticipated to cause upon further development. ECF No. 53 at 36–38. Defendant has not demonstrated that that conclusion constituted manifest error such that reconsideration would be appropriate.

In construing the condition to permit approval imposed by Defendant on Plaintiffs, the Court did so relatively broadly:

> Plaintiffs characterize the condition as "forc[ing] Basso Builders to pay for an engineer to design a stormwater control system, and to install improvements," ECF No. 46 at 14, and Defendant characterizes it more narrowly as "returning the [Violet Road Sites'] stormwater velocities to their pre-2006 pipe installation condition." ECF No. 44 at 9. The correct answer is both; permit approval was conditioned on Plaintiffs hiring an engineer to develop a method or methods, which Plaintiffs would then have to implement/install, to alleviate stormwater drainage concerns on the Violet Road Sites—specifically, to reduce the drainage velocity to pre-2006-pipe-installation levels to alleviate downstream flooding and erosion.

ECF No. 53 at 33. Despite quoting this excerpt in its motion, ECF No. 55 at 5, Defendant's motion nevertheless evidences that it continues to view the issues somewhat more narrowly than does the Court. The condition was not to reduce stormwater velocity flow rates through the Violet Road Sites merely as an end in itself. It was not to construct stormwater drainage

---

standard of rough proportionality represents a necessary step toward a meaningful Takings Clause by requiring more rigorous and particularized cost-benefit analysis than was previously required . . . ; however, the ambiguities in the majority opinion leave almost all land use planning decisions open to attack under the Takings Clause." Allison B. Waters, *Constitutional Law—Takings—City Planners Must Bear the Burden of Rough Proportionality in Exactions and Land Use Regulation*, Dolan v. City of Tigard, *114 S. Ct. 2309 (1994)*, 37 S. Tex. L. Rev. 267, 273 (1996) (hereinafter "*City Planners Must Bear the Burden*").

mechanisms simply for the sake of doing so. Nor was it limited solely to addressing the stormwater velocity through the pipe; to obtain permit approval for the Violet Road Sites, Plaintiffs had to undertake various stormwater-related improvements. ECF No. 53 at 33 ("Plaintiffs characterize the condition as 'forc[ing] Basso Builders to pay for an engineer to design a stormwater control system, and to install improvements,' . . . and Defendant characterizes it more narrowly as 'returning the [Violet Road Sites'] stormwater velocities to their pre-2006 pipe installation condition.' . . . *The correct answer is both* . . . .") (emphasis added); *id.* at 8–10 (noting that Hemmerich conditioned permit approval for the Violet Road Sites on Plaintiffs "hir[ing] a professional engineer to design a stormwater management system"); ECF No. 39-2 at 1 (engineer David Hemmerich deposition) (defining "stormwater management system" as "includ[ing] the pipe, . . . the site, the existing drainage, what remained of the channel" and noting that "[a]ll those things included is [sic] kind of the stormwater management system . . . , so it's . . . really the collection of all the drainage features on the [Violet Road Sites]"); ECF No. 21-12 at 1 (Cardinal deposition) (noting that there was also "runoff . . . happening from [the Violet Road Sites] that is also contributing to the overall runoff basin that's not being collected in the pipe. It's going over the top of the ground."); *id.* (Cardinal deposition) ("I understand the Town was wanting . . . to decrease the water as it left the Violet Road [Sites]," not merely the water flowing through the pipe).

  The point was to "alleviate downstream flooding and erosion" and to "alleviate stormwater drainage concerns on the Violet Road Sites." ECF No. 53 at 33. Defendant seems to contemplate the issue of stormwater velocity reduction in a vacuum, isolated to the context of the pipe and

untethered from the externalities that are really at issue—downstream flooding and erosion. But the Court does not view the issue through such a restrictive lens.

The question left unanswered was whether what Defendant mandated Plaintiffs do to gain permit approval was "related both in nature and extent to the impact" of the development of the Violet Road Sites, ECF No. 53 at 34–35 (quoting *Dolan*, 512 U.S. at 391), and whether it "require[d] [Plaintiffs] to give up more than [wa]s necessary to mitigate harms resulting from" their development, *Sheetz v. County of El Dorado*, 601 U.S. 267, 276 (2024). The Court maintains that Defendant's motion for summary judgment did not demonstrate as a matter of law that the condition imposed was appropriately "related both in nature and extent," ECF No. 53 at 34–35 (quoting *Dolan*, 512 U.S. at 391), to the erosion and flooding-related concerns posed by the Violet Road Sites development, nor that the condition did not "require [Plaintiffs] to give up more than [wa]s necessary to mitigate [erosion and flooding-related] harms resulting from" that development, *Sheetz*, 601 U.S. at 276.

Ryan Cardinal of Cardinal Engineering ("Cardinal") testified that the increase in velocity of stormwater flowing from the drainage basin through the Violet Road Sites by way of the pipe did not cause the flow "to become [of] such a velocity that causes erosion and flooding." ECF No. 36 at 20. He testified that the stormwater drainage flow was "of the condition already"—that irrespective of whether Plaintiffs had installed the pipe in 2006, and irrespective of whether they developed the Violet Road Sites further, stormwater was already flowing, and would continue to flow, through the Violet Road Sites at a velocity that would cause erosion and flooding downstream. *Id.*; *see also* ECF No. 21-12 at 2 (Cardinal deposition)

(Q: "Do you maintain . . . as an engineer that there are no concerns regarding flowage coming off of the Violet Road [Sites]?" A: "My opinion is it was an existing condition."). Similarly, engineer David Hemmerich ("Hemmerich") acknowledged at his deposition that he had concluded in a 2017 study—after the installation of the pipe in 2006, but before Plaintiffs returned to develop the Violet Road Sites further—that "nothing had to be done with respect to improving the [Violet Road Sites] in order to effectively manage better stormwater runoff . . . ." ECF No. 39-1 at 23; *cf. Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 96 (Tex. Ct. App. 2013) (reversing summary judgment for defendant municipality on takings claim because the defendant "presented no evidence that the removal of trees from appellant's private property would increase the need for trees on public property or for the other programs *beyond what already existed before appellant removed the trees on its property*") (emphasis added).

Cardinal also testified, as relevant, that the stormwater velocity reduction mandated by Defendant as a condition to permit approval was "not normally required on a project like" the Violet Road Sites' development and would usually only be required "[o]n larger developments." ECF No. 21-11 at 11–12 (Q: "Would anything performing the function of a trap weir have been appropriate on these properties . . . in any way?" A: "Not normally." Q: "Okay. And why was that?" A: "Because of the size of the projects being less than an acre."). In light of the foregoing, the Court concluded that a factfinder could "reasonably question whether the condition imposed" for permit approval for the Violet Road Sites "was truly 'proportional to the development's anticipated impacts.'" ECF No. 53 at 37 (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 703 (1999)).

Page 7 of 12
Case 2:21-cv-00697-JPS    Filed 10/25/24    Page 7 of 12    Document 59

The Court also readily acknowledged, however, that Hemmerich disagreed with Cardinal on the point of whether the pipe that Plaintiffs had previously installed on the Violet Road Sites increased drainage velocity such that downstream erosion would be exacerbated. *Id.* at 37–38. In contrast to Cardinal's testimony, Hemmerich instead asserted that downstream "erosion increased due to the increased velocity of the pipe." ECF No. 39-2 at 32[3]; ECF No. 39-1 at 32 (Hemmerich deposition) ("[A]ny time you introduce a pipe into a system like that, it's going to move the water faster, which then increases the chances of erosion and other problems downstream."). After recounting Hemmerich's and Cardinal's differing testimony on these issues, the Court noted that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." ECF No. 53 at 38 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The Court also noted that, in determining whether the rough proportionality element was satisfied, a factfinder could consider Defendant's long-standing failure to address stormwater drainage issues in the Town generally. ECF No. 53 at 37 ("The fact[] that . . . the Town has been plagued for years with stormwater drainage issues and has apparently failed to, at its own cost, implement Town-wide measures to alleviate those issues" is "relevant background context for" determining whether the condition imposed was truly "proportional to the development's anticipated impacts" (quoting *Del Monte Dunes*, 562 U.S. at 703)). Defendant

---

[3]Confusingly, and notwithstanding the fact that both Cardinal and Hemmerich explicitly reference the issue of stormwater velocity in their above-quoted testimony, Defendant argues that this dispute "identified by the Court . . . is not a dispute of the facts relating to stormwater velocity." ECF No. 55 at 11.

argues that this background context is both irrelevant and immaterial and "do[es] not create a dispute of material fact so as to preclude summary judgment." ECF No. 57 at 3. The Court disagrees that it is irrelevant, and the Court never concluded that it was material such that it could, standing alone, preclude summary judgment in the first place. The Court stated only that it was "relevant background context." ECF No. 53 at 37.

"The standard for relevance is low." *United States v. Driggers*, 913 F.3d 655, 658 (7th Cir. 2019) (citing *Tennard v. Dretke*, 542 U.S. 274, 284–85 (2004)). The law of unconstitutional conditions asks whether the property owner is truly being made to internalize the externalities for which the property owner himself is responsible; it is, in that sense, a matter of "fairness and justice." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The contextualizing facts regarding the drainage and erosion related issues that pre-dated development on the Violet Road Sites are relevant to that question. A factfinder's consideration of the Town's long-standing failure to address stormwater drainage issues, in conjunction with Cardinal's testimony, could lead the factfinder to conclude that, rather than "forcing [Plaintiffs] to internalize the costs (the 'negative externalities') that [their] development" posed, Defendant was instead "leverag[ing] its monopoly permit power" and using the opportunity as a means of addressing a larger, community-level problem that it had historically ignored. *Knight v. Metro. Gov't of Nashville & Davidson Cnty.*, 67 F.4th 816, 824–25 (6th Cir. 2023) (citing *Koontz v. St. Johns River Mgmt. Dist.*, 570 U.S. 595, 604–05 (2013) and *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021)).

Defendant argues that the Court essentially applied the "substantially advances" formula that the Supreme Court rejected in *Lingle v. Chevron U.S.A., Incorporated*, 544 U.S. 528 (2005). ECF No. 55 at 3. Again,

Page 9 of 12
Case 2:21-cv-00697-JPS    Filed 10/25/24    Page 9 of 12    Document 59

the Court disagrees. In *Lingle*, the Supreme Court noted that "[t]he 'substantially advances' formula suggests a means-end test: It asks, in essence, whether a regulation of private property is *effective* in achieving some legitimate public purpose." 544 U.S. at 542. "The 'substantially advances' inquiry probes the regulation's underlying validity. But such an inquiry is logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Id.* at 543. The Supreme Court further concluded that the "substantially advances" formula was untenable in the takings context because "it would require courts to scrutinize the efficacy of a vast array of state and federal regulations—a task for which courts are not well suited." *Id.* at 544.

In its order denying in part Defendant's motion for summary judgment, the Court did not apply the "substantially advances" formula— in name or in essence. It did not ask whether the condition imposed by Defendant "substantially advance[d] a legitimate government interest." *Lingle*, 544 U.S. at 548. The Court relied instead upon the rule established in *Nollan* and *Dolan*, which is "entirely distinct from the 'substantially advances' test," *id.* at 547, but which nevertheless "imparts a relatively heightened level of scrutiny for land use regulations," Waters, *City Planners Must Bear the Burden* at 285. *See* ECF No. 53 at 29–30. In applying that rule, the Court acknowledged that rough proportionality does not require a "precise mathematical calculation." ECF No. 53 at 34 (quoting *Dolan*, 512 U.S. at 391). Nevertheless, and in the face of conflicting testimony and a somewhat troubling set of background contextualizing facts, the Court was wary of imprudently rendering a determination as a matter of law. The Court remains unconvinced that it manifestly erred in that respect.

### 3.2 Whether the Issue of "Rough Proportionality" May be Put Before a Jury

Defendant next argues that the Court erred in suggesting that "whether a condition is 'roughly proportional'" could be determined by a jury. ECF No. 55 at 3–4. The Court again disagrees. While courts have not addressed this question uniformly across the board, and while the Seventh Circuit has not addressed the matter, various courts have concluded that the rough proportionality inquiry may present a mixed question of law and fact which may properly be put before a jury. *E.g.*, *Tap House Real Est., LLC v. City of Rochester*, No. 22-CV-492 (ECT/DTS), 2024 U.S. Dist. LEXIS 127318, at *30–31 (D. Minn. July 19, 2024) (citing *Heritage at Pompano Hous. Partners v. City of Pompano Beach*, No. 20-61530-CIV-SMITH/VALLE, 2021 U.S. Dist. LEXIS 239647, at *25–26 (S.D. Fla. Dec. 15, 2021) ("[I]t is an issue for the jury to decide whether . . . there is a rough proportionality between the public costs of the Project and the Improvements."); *Skoro v. City of Portland*, 544 F. Supp. 2d 1128, 1131 n.1 (D. Or. 2008); and *City of Perris v. Stamper*, 376 P.3d 1221, 1231 (Cal. 2016)); s*ee also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1428 (9th Cir. 1996) (concluding that inverse condemnation claim presented a "mixed question[] of law and fact, which may be submitted to the jury if . . . essentially factual, even if [it] implicate[s] constitutional rights" (collecting cases), *aff'd*, *Del Monte Dunes*, 526 U.S. 687 (1999)); *cf. Sadowsky v. New York*, 732 F.2d 312, 317 (2d Cir. 1984) ("The evaluation of whether a taking has occurred is essentially a factual inquiry . . . ." (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978))).

## 4. CONCLUSION

Defendant has not demonstrated that the Court committed manifest error in denying in part Defendant's motion for summary judgment. Accordingly, Defendant's motion for reconsideration must be denied.

Accordingly,

**IT IS ORDERED** that Defendant Town of Geneva's motion for reconsideration, ECF No. 55, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of October, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge